```
              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF TEXAS
                  SAN ANTONIO DIVISION

PAUL JAMISON,                    *
                                 *
          Plaintiff,             *
                                 *
     v.                          *   CIVIL NO. SA-15-CA-166-JWP
                                 *
CAROLYN W. COLVIN, Acting        *
Commissioner of the Social       *
Security Administration,         *
                                 *
          Defendant.             *
```

## FINDINGS AND CONCLUSIONS

Plaintiff instituted this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the determination of Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration, that plaintiff is not disabled and, therefore, not entitled to receive disability and supplemental security income ("SSI") benefits.  Plaintiff protectively filed his applications for benefits on February 1, 2013 and July 2, 2013 alleging disability beginning December 31, 2012.  (Tr. pp. 165-71).  The Social Security Administration denied the applications both initially and upon reconsideration.  On September 11, 2014, after a hearing, an administrative law judge ("ALJ") determined that plaintiff is not disabled.  (Tr. pp. 14-24).  With modifications, the Appeals Council denied plaintiff's request for review, making the determination of the ALJ the final decision of the Commissioner.  Plaintiff now appeals that determination.

**Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and suffers a disability is entitled to receive disability insurance benefits.  **42 U.S.C. § 423(a)(1).**  Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive SSI.  **42 U.S.C. § 1382(a).**  The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  **42 U.S.C. §§ 423(d)(1)(A)** and **1382c(a)(3)(A).**  A person shall be determined to be disabled only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  **42 U.S.C. §§ 423(d)(2)(A)** and **1382c(a)(3)(B).**

**Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe five basic steps or considerations in evaluating disability claims. **20 C.F.R. §§ 404.1520** and **416.920**. To be found disabled, the claimant first bears the burden of proving that:

(1) he is not currently engaged in substantial gainful activity;  (2) he has an impairment or combination of impairments that is severe; and,

(3) the impairment meets or equals a listed impairment; or,

(4) in light of the claimant's residual functional capacity ("RFC"), the impairment prevents the claimant from returning to his past relevant work. ***Audler v. Astrue***, 501 F.3d 446, 447-48 (5th Cir. 2007). If the claimant establishes these elements, the burden shifts to the Commissioner to prove that:

(5) considering the claimant's residual capacities and his age, education, and work experience, the impairment does not prevent him from performing other jobs which exist in significant numbers in the national economy. ***Id***. at 448. If the Commissioner adequately points to potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternative work. ***Perez v. Barnhart***, 415 F.3d 457, 461 (5th Cir. 2005). A finding that a claimant is disabled or is not disabled at any point in the five-step review is

3

conclusive and terminates the analysis. *Randall v. Astrue*, 570 F.3d 651, 653 (5th Cir. 2009).

## Standard of Review

In reviewing the Commissioner's decision denying disability or SSI benefits, the Court must determine whether the ALJ applied the proper legal standard and, if so, whether substantial evidence supports the ALJ's decision. *Randall*, 570 F.3d at 655. Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion. *Id.* at 662. The Court must refrain from reweighing the evidence or substituting its judgment for that of the Commissioner. *Id.* Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Perez*, 415 F.3d at 461.

## ALJ's Findings and Plaintiff's Contentions

The ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset date. At the second and third steps of the evaluation process, the ALJ determined, after reviewing the objective medical evidence, that plaintiff has the following severe impairments: cardiomyopathy with atrial fibrillation, status-post ablation; status post left knee replacement; obstructive sleep apnea; and obesity, but that these impairments do not, either singly or in combination, meet or equal a listed impairment.

At the fourth step of the evaluation process, the ALJ assessed plaintiff's RFC and the demands of his past work. He determined that plaintiff retains the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday; no work at unprotected heights or around dangerous hazards; no climbing ropes, ladders, or scaffolds; frequent crouching, crawling, stooping, and kneeling and occasional climbing ramps and stairs. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the ALJ found that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. Utilizing the testimony of a vocational expert ("VE"), he found that plaintiff is able to perform his past relevant work as a car salesman and a land surveyor helper; therefore, he is not disabled.

On review, the Appeals Council did not agree with the ALJ's finding that plaintiff could perform his past relevant work as a land surveyor helper, a medium level job. (Tr. pp. 4-5). The Appeals Council also disagreed with the ALJ's finding that plaintiff's past work as a car salesperson corresponds to DOT listing #273.357-010, titled "Sales Representative, Aircraft Equipment," and is described as a light job with an SVP level of 6. (Tr. p. 5). Rather, his past work as a car salesperson is

5

most consistent with DOT listing #273.357-022. (Id.). The Appeals Council concluded that plaintiff's impairments and the limitations on his ability to perform work-related activities do not preclude the performance of past relevant work as car salesperson. (Id.).

Plaintiff contends that the decision of the Commissioner is not supported by substantial evidence. He states that, throughout the decision, the ALJ references and explicitly relies upon his own interpretation of the raw medical data to support his conclusions. Plaintiff also alleges that several of the ALJ's findings are based upon facts that are simply not contained within the record. Next, plaintiff argues that the ALJ erred in finding that his efforts to find a job are inconsistent with his claim of disability. He further disputes the conclusion that the acceptance of unemployment benefits negatively should impact plaintiff's credibility. Plaintiff also faults the ALJ for suggesting that plaintiff is eligible for Social Security retirement benefits.

## Analysis

Plaintiff's brief begins with accusations of "unfounded conclusions, irrelevancies, and outright misstatements" in the ALJ's decision with "unsupported and erroneous posturing [which] infects and encumbers both his treatment of the medical opinion evidence and his credibility finding." The tone towards the ALJ

6

throughout plaintiff's brief is improperly and unnecessarily adversarial. Regardless of counsel's opinion of the number of errors made by the ALJ or the degree of their severity, he would do well to maintain the proper respect for the Commissioner and her staff. Such heavy-handed advocacy detracts from rather than enhances the efficacy of counsel's argument.

**1. Raw data interpretation**

This Court has been greatly impressed by the effective and meritorious presentations by Mr. Osterhout in previous Social Security disability appeals. Notably absent from the instant appeal are substantive arguments for reversal. Initially, plaintiff complains that the ALJ was "playing doctor" when he erroneously reported that plaintiff told his doctor he had a Class III heart per the New York Heart Association standards. (Tr. p. 18). The ALJ noted that plaintiff denied saying that to his doctor and concluded that either plaintiff or the report was wrong. Plaintiff states that review of this note, using logic and common sense alone, plainly demonstrates that the conflict between his testimony and the record described by the ALJ is wholly imaginary.

In fact, the doctor's note states, plaintiff "reports stable NHYA (sic) FC III DOE and has chronic orthopnea but no PND."[1] (Tr. p. 609). The Court agrees with plaintiff that a fair read-

---

[1] New York Heart Association Functional Classification Three.

7

ing of the report suggests that plaintiff presented symptoms which led the physician to make that assessment, not that plaintiff described his cardiac functional class to his doctor. The ALJ's mistake has no consequence. He neither found that plaintiff's heart condition was less serious because he thought the classification was self-reported nor did he discount plaintiff's credibility based upon the statement.

Plaintiff then argues that the "Class III heart" designation, authored by a cardiologist, is consistent with other evidence of record that he is limited to sedentary work.[2] Plaintiff accuses the ALJ of relying upon his own interpretation of the raw medical data to support his conclusions. Yet, here, plaintiff does precisely that. He offers his own opinion that a person with a Class III heart is unable to perform his past relevant work of a car salesman, with no regard for any other cardiac findings in that physician's report, not to mention the medical findings in the remainder of the record. Instead, he continues to challenge the ALJ's methods of analysis, not the substance of his decision.

## 2. Stress test and knee surgery

The ALJ found that plaintiff's clearance to undergo an exercise treadmill test "seems to suggest that claimant's heart is strong enough to do light work." (Tr. p. 20). He also noted

---

[2] Although plaintiff indicates the other evidence in the record will be "discussed momentarily," it is never mentioned.

8

that "[t]here would necessarily have been some type of examination [prior to plaintiff's total left knee replacement] to assure that claimant's heart was strong enough for this operation, which of course it was." (Id., p. 21). Plaintiff states that the ALJ does not explain how being strong enough to undergo knee surgery has any bearing on a person's physical ability to work on a full-time basis. He also argues that clearance to undergo an exercise stress test is in no way definitive evidence of the ability to perform "light work". Plaintiff cannot argue and does not contend that such evidence carries no weight in the ALJ's analysis. As the Commissioner noted these were only two of many factors that the ALJ considered in making his decision.

### 3. Failure to attend consultative examination

Plaintiff also complains of the ALJ's determination to discount his credibility because he failed to attend a scheduled internal medicine evaluation by Yu Kuo, M.D. (Tr. p. 23). The ALJ notes that plaintiff was notified of the appointment and sent a reminder letter, yet failed to appear. Plaintiff states that the record is completely devoid of any facts surrounding this event, making it entirely impossible to determine the circumstances under which he did not attend. Plaintiff does not dispute that a consultative examination was scheduled or that he failed to attend. Instead, he asserts that the ALJ was duty

9

bound to inquire at the hearing as to why plaintiff did not attend.

Because hearings under the Social Security Act are non-adversarial, "[t]he hearing examiner has the duty, accentuated in the absence of counsel, to develop the facts fully and fairly and to probe conscientiously for all of the relevant information." *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015)(*quoting* *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981)).  The court may reverse the ALJ's decision if the claimant can show that "(1) the ALJ failed to fulfill his duty to develop the record adequately and (2) that failure prejudiced the plaintiff." *Id.* (*quoting* *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012)).  Title 20 C.F.R. §§ 404.1518 and 416.918 provide: "If you are applying for benefits and do not have a good reason for failing or refusing to take part in a consultative examination ..., we may find that you are not disabled or blind."

In this case, the ALJ fulfilled his duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information when he sent plaintiff for the consultative examination.  *Glass v. Colvin*, 2015 WL 5732175, at *1 (W.D.Pa. 2015).  Despite being notified of the appointment, and sent a reminder of the date, plaintiff failed to appear.  His argument that the ALJ's duty to fully and fairly develop the facts extends to seeking an explanation for that failure is

10

wholly unpersuasive. As in *Glass*, nothing in the record indicates that plaintiff or his counsel requested a new examination date, or that plaintiff or his counsel provided an explanation for his failure to appear. As in *Glass*, even in plaintiff's brief, no explanation is provided for his failure to appear at the examination. Furthermore, as in *Glass*, at no point during the administrative hearing itself—during which plaintiff was represented by, and questioned by, counsel—did plaintiff's counsel take the opportunity to explain why plaintiff had neglected to attend his consultative examination. The ALJ fully and fairly developed the facts and was fully warranted in discounting plaintiff's credibility based upon his failure to appear for his consultative examination.

**4. Seeking work and unemployment benefits**

In recounting plaintiff's testimony, the ALJ noted that plaintiff stated he was able to drive to the grocery store and had been going to the Texas Workforce Commission since 2009 to find a job. (Tr. p. 18). The ALJ believed the latter was "inconsistent with a claim of disability." Later, the ALJ indicated that plaintiff was receiving unemployment benefits. (Tr. p. 23). He stated, "While acceptance of unemployment benefits in no way impacts a medical determination of disability, as the two systems differ in policy goals, regulations and acceptance criteria, such acceptance does impact the claimant's credibility.

11

Such acceptance shows that the claimant was actively applying for work, claimed to be available for work and held himself out to another agency to be able and willing to work during the adjudicative period." (Id.).

Plaintiff asserts that it is altogether consistent with an allegation of disability that there are some types of jobs that he can still perform. He also points out that Memorandums from the Chief ALJ, the most recent dated August 9, 2010, indicate that the receipt of unemployment insurance benefits does not preclude the receipt of Social Security disability benefits. The Memorandum states that receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled. **See 20 C.F.R. §§ 404.1512(b) and 416.912(b)(2012).** The Memorandum notes that a person can qualify for Social Security disability benefits even though he or she remains capable of performing some work.

The Chief ALJ's Memorandum does not support plaintiff's assertion that plaintiff's attempt to find work and/or receipt of unemployment compensation has no bearing upon his credibility. As noted, receipt of unemployment benefits is one factor that can be considered. While a person can qualify for Social Security disability benefits even though he remains capable of performing some work, the type of work he is seeking could well be inconsistent with his disability claim. Plaintiff testified he

12

has been trying to find a job through the Texas Workforce Commission since 2009, five years prior to the administrative hearing and three years prior to his onset date. (Tr. pp. 44-45). He does not specify what types of jobs he is seeking. In that time, he has received no jobs and no job interviews. (Id., p. 46). Considering the length of time plaintiff has sought a job, the Court finds that the ALJ was warranted in concluding that these efforts are inconsistent with his claim for disability.

Despite the Chief ALJ's Memorandum, courts have held that, seeking work, as well as receipt of unemployment benefits is inconsistent with a claimant's claim of being disabled. **Hammock v. Colvin**, 2014 WL 7013886, at *10 (W.D.Tex. 2014)(*citing* **Celebrezze v. O'Brien**, 323 F.2d 989, 992 (5th Cir. 1963). **See Jones v. Astrue**, 2015 WL 1346244, at *5 (M.D.La. 2015)(ability to obtain unemployment benefits, actively seek employment, and attend job interviews were three factors which contributed to substantial evidence that supported ALJ's determination). In **Robinson v. Colvin**, 2013 WL 3480731, at *9 (S.D.Tex. 2013), plaintiff admitted he had been receiving unemployment benefits and that he had been applying for jobs in order to continue to receive benefits. The ALJ there noted, as did the ALJ here, that, "[w]ith his application and receipt of unemployment insurance benefits, the claimant is aware that he holds himself out to be ready, willing, and able to work. This assertion is inconsistent his

13

allegations of being disabled and further detracts from his credibility." *Id.,* p. 10. The Court found that, because the ALJ made and supported his credibility determination with references to medical evidence and plaintiff's testimony about his daily activities, and because the ALJ did not rely on any improper factors, the subjective evidence factor also weighs in favor of the ALJ's decision." *Id.* Similarly, plaintiff's efforts to obtain employment and receipt of unemployment benefits are not improper factors to be considered and were not the only factors the ALJ took into account in weighing plaintiff's credibility. Therefore, no error was committed.

**5. Advice about retirement benefits**

Next, plaintiff complains that the ALJ advised plaintiff at the administrative hearing that, being age 62, he was eligible for retirement benefits. The issue was raised twice. The ALJ explicitly told plaintiff that the matter of his eligibility for retirement benefits would have nothing to do with the disability decision. (Tr. p. 63). He stated that there would be a reduction at his age, and he was not advising him that he should seek Social Security retirement, only that he should "look at it.". (Id.). The issue was raised again briefly at the end of the hearing. (Id., pp. 74-75). This discussion had no bearing whatsoever on the ALJ's decision and requires no further consideration.

14

**6. Treating provider opinions**

In his most substantive claims, plaintiff contends that the ALJ failed to accord sufficient weight to the opinions of Dr. Phillip Rinn concerning limitations due to his knee impairment and Traci Forrest, R.N., concerning his cardiac impairment. On July 7, 2013, Dr. Rinn wrote that plaintiff could not walk more than two blocks or carry over 30 pounds due to his knee injury. (Tr. p. 350). Also, on July 29, 2014, Traci Forrest, a registered nurse for Dr. Ronnie Garcia, one of plaintiff's cardiologists, completed a questionnaire concerning plaintiff's ability to perform physical activities. (Id., pp. 589-91). She found that plaintiff could walk maybe two blocks without resting, can continuously sit for more than two hours, can continuously stand for 15 minutes, and can stand/walk less than two hours in an 8-hour workday. She stated he would need about three unscheduled breaks per day, and could occasionally lift less than 10 pounds. Plaintiff contends that the ALJ improperly rejected these opinions without analyzing the factors set forth for evaluating the opinion of a treating source in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The opinion of a treating physician who is familiar with the patient's impairments, treatment, and responses should be accorded great weight in determining disability. ***Newton v. Apfel***, 209 F.3d 448, 455 (5th Cir. 2000). However, the opinions

15

of a treating physician are not conclusive. *Id.* The ALJ may give less weight, or no weight, to a treating physician's opinion when there is good cause shown to the contrary, as when his statement as to disability is brief and conclusory, is not supported by medically acceptable, clinical and laboratory diagnostic techniques or is otherwise unsupported by the evidence. *Id.* at 455-56.

Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject or give little weight to a treating physician's opinion only if the ALJ performs a detailed analysis of the following factors: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician. **Newton**, 209 F.3d at 453, 456-57; **20 C.F.R. §§ 404.1527(c)** and **416.927(c) (2012)**. **Newton** is inapplicable when there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. *Id*. at 458. Nor does it apply when the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated

16

or examined the claimant and have specific medical bases for a contrary opinion. *Id.*

Dr. Rinn's opinion that plaintiff cannot carry over 30 pounds due to his knee injury is not inconsistent with the ALJ's finding that plaintiff can carry 20 pounds occasionally and 10 pounds frequently. Whether Dr. Rinn's opinion that plaintiff could not walk more than two blocks is inconsistent with the ALJ's RFC requirement that plaintiff stand and walk 6 hours in an 8-hour workday is not as clear. Assuming it is inconsistent, the Court finds that the ALJ was warranted in rejecting Dr. Rinn's restriction.

The ALJ noted that plaintiff underwent a total left knee replacement on November 12, 2012. (Tr. pp. 21, 296). When seen on December 21, 2012 by Dr. Jack Deetjen, he was complaining of knee swelling but did report the knee pain was improving. (Id., p. 260). Examination showed the surgical wound was healing and there were no signs of infection; no erythema, no ecchymosis and 2+ effusion; and diffuse edema and no deformities. (Id., p. 261). Plaintiff had a limited active range of motion with flexion to 100 degrees. (Id.). He had no pain with patellofemoral compression. (Id.). The ligamentous was stable to varus/valgus stress, anterior/posterior drawer, and Lachman's exam. (Id.). The meniscal had medial joint line tenderness and there was lateral joint line tenderness. (Id.). Sensory and motor was in-

17

tact. (Id.).

On January 22, 2014, the ALJ noted that plaintiff was seen by Dr. Sanon Prlyanka when plaintiff reported that he was "largely sedentary" and had intermittent lower extremity swelling. (Tr. pp. 21, 609). Examination showed there was no edema. (Id.). There was no annotation of any pain medication for knee pain. (Id.). When seen by Dr. Garcia on May 16, 2014, examination showed that plaintiff was negative for limb pain and myalgias. (Id., p. 578). In light of the competing first-hand medical evidence from other treating physicians, it was unnecessary for the ALJ to evaluate each of the regulatory factors prior to rejecting Dr. Rinn's opinion. *Newton*, 209 F.3d at 458. Dr. Rinn's brief and conclusory hand-written note is not supported by medically acceptable, clinical and laboratory diagnostic techniques and is contradicted by other evidence. *Id*. at 455-56.

The ALJ also properly rejected Nurse Forrest's opinion. While according some weight to her assessment, the ALJ stated that her opinion was not fully consistent with the other evidence of record. (Tr. p. 22). He noted that her report did not list the nature, frequency or length of contact. (Id.). The ALJ found no evidence to support the asserted limitations that plaintiff cannot lift even 10 pounds, and needed to avoid presumably any excessive dust, gas chemicals, etc. (Id.). The ALJ

also pointed out that Nurse Forrest is not an acceptable medical source, though her opinion must be (and was) considered. **See 20 C.F.R. §§ 404.1513(a),(d) and 416.913(a),(d).** *Muniz v. Colvin*, 2015 WL 5062303, at *8 (W.D.Tex. 2015)(nurse is not an acceptable medical source under the regulations).

The ALJ also discounted Nurse Forrest's functional report because plaintiff reported that he is able to complete all of his activities of daily living - without any major complications and has described his daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. (Tr. p. 22). Plaintiff does not dispute this finding. The ALJ further pointed out that when plaintiff was seen by Dr. Garcia on May 16, 2014, two months prior to Nurse Forrest's functional report, it was noted that the disease had been stable. (Id., p. 578). He reported chest pain but was negative for dizziness, palpitations, pedal edema, and tachycardia. (Id.). Plaintiff did not report symptoms related to atrial fibrillation. (Id., p. 580).

**7. RFC**

In reviewing the Commissioner's decision denying disability or SSI benefits, the Court must determine whether the ALJ applied the proper legal standard and, if so, whether substantial evidence supports the ALJ's decision. *Randall*, 570 F.3d at 655. Clearly, the ALJ applied the properly legal standards. (Tr. pp.

15-16). He discussed the plaintiff's testimony from the administrative hearing and conducted an extensive review of the medical evidence in the record of plaintiff's impairments. (Id., pp. 18-22). The Court finds that substantial evidence supports the ALJ's RFC assessment. Therefore, in light of the vocational expert's testimony that plaintiff can return to his past relevant job as a car salesman, substantial evidence supports the Commissioner's conclusion that plaintiff is not disabled. The decision of the Commissioner denying plaintiff's applications for disability and SSI benefits is **AFFIRMED.**

   **SIGNED** October 5, 2015.

_____
**JOHN W. PRIMOMO**
**UNITED STATES MAGISTRATE JUDGE**